VICENTE GÉIGEL POLANCO, Plaintiff and Appellee, *v.* PRUDENCIO RIVERA MARTÍNEZ, COMMISSIONER OF LABOR, ET AL., Defendants and Appellants.

No. 6135. Argued December 7, 1934.—Decided February 20, 1935.

*Benjamin J. Horton, Attorney General,* and *Felipe Janer, Deputy At-torney General,* for the appellant Commissioner. *Samuel R. Qui-ñones* for the appellee.

Mr. Chief Justice del Toro delivered the opinion for the court.

Vicente Géigel Polanco brought this mandamus proceeding against the Commissioner of Labor, Prudencio Rivera Martí-nez, and against Narciso Estrella, praying that a writ be issued commanding the defendant Rivera Martínez to proceed immediately to reinstate the petitioner in his office as "At-torney in Charge of the Wage Protection and Claim Bureau" of the Department of Labor or, in case the said office is con-sidered as newly created, to draw up the corresponding ap-pointment in the name of the petitioner. The petitioner also prayed by way of damages, that the said defendant Rivera Martínez, as Commissioner of Labor, be ordered to draw up and send to the Auditor of Puerto Rico the vouchers for the salaries which the petitioner failed to receive, from July 1, 1931, to the day of his reinstatement.

An alternative writ was issued, the defendant Rivera Mar-tínez appeared, and demurred to and answered the petition. In brief, he maintained the validity of his acts, and asked that the petition be dismissed. The other defendant, Estrella, did not appear.

After the hearing the court rendered judgment in the following terms:

"For the reasons stated in the opinion which appears in the record of the present case and which is made to form a part of this judgment, the court hereby renders judgment sustaining the petition for a writ of mandamus filed in this case and therefore orders that a peremptory writ of mandamus be issued, directed to the defendant Prudencio Rivera Martínez, Commissioner of Labor, commanding him to proceed forthwith to appoint the plaintiff Attorney In Charge of the Wage Protection and Claim Bureau; it is further ordered that he proceed forthwith to approve and send to the Auditor of Puerto Rico the vouchers covering the salaries that the petitioner has failed to receive as the holder of the said office from July 1, 1931, to the date on which the appointment shall have been made, all without special imposition of costs."

Feeling aggrieved by that decision, defendant Rivera Martínez took the present appeal.

After a careful examination of the record and the briefs, we think that there is no substantial dispute concerning the facts. The conflict arises from the conclusions of law which may be derived from the said facts.

The facts, in brief, are as follows:

On April 29, 1930, there was approved Act No. 59 (Session Laws, p. 420), to amend certain sections of Act No. 35 of 1925 (Session Laws, p. 200), which reorganized the Department of Agriculture and Labor. Section 5 of the amendatory act provides that section 51 of the said Act No. 35 of 1925 be amended to read, in part, as follows:

"The Wage Protection and Claim Bureau, as created by law, shall consist of the following personnel:

"One Claim Agent who shall be a competent attorney-at-law of integrity, who shall receive, consider and decide all complaints filed by workmen or employees against employers negligent in the payment of their wages or salaries, or who have refused to make such payments. He shall take action on such complaints and claims and shall institute civil or criminal proceedings against such employers as the case may be, where such procedure is necessary, and he shall

interpret and supervise wage or metayer labor contracts.'' Session Laws, p. 428.

And in the General Appropriation Act for 1930–1931, that is, for the year corresponding to that in which the amendment was made, the following appropriation appears:

''Wage-claim division: Attorney in charge of division, $1,800.00.'' Session Laws, 1930, p. 510.

The petitioner, Vicente Géigel Polanco, an attorney, was appointed by the Commissioner of Agriculture and Labor to the office of Attorney in Charge of the Wage-Claim Division thus created on July 1, 1930, and held it until June 30, 1931, also acting as prosecutor in all of the complaints brought in the municipal courts for violation of the laws for the protection of labor.

By act of February 18, 1931, the Congress of the United States created the Department of Labor as one of the Executive Departments of Puerto Rico and on April 14, 1931, the Governor of the Island approved Act No. 15 of the Legislature by virtue of which said department was properly organized to function independently. Section 1 of the said act reads as follows:

''This Act shall be known and referred to as the 'Organic Act of the Department of Labor of Porto Rico.' '' Session Laws, p. 170.

Section 7 provides:

''The Commissioner of Labor is hereby expressly authorized to appoint all such personnel as may be necessary the better to organize and operate the Department.'' Session Laws, p. 174.

Section 11, in its pertinent part, says:

''The Department of Labor shall consist of the following divisions, bureaus and services:

\*     \*     \*     \*     \*     \*     \*

''(g) Wage Protection and Claim Bureau.'' Session Laws, p. 176.

Section 20 reads as follows:

"The Wage Protection and Claim Bureau shall consist of a person in charge thereof, who shall be a competent attorney-at-law and a man of integrity, who shall receive, study and decide all complaints and claims filed by laborers or employees, including domestics, against employers negligent in the payment of their compensations, per diems, wages or salaries, or who have refused to make such payments. He shall prosecute such complaints and claims and shall institute proceedings, either civil or criminal, as the case may be, against said employers, where such procedure is necessary; he shall interpret and supervise wage or metayer labor contracts, and he shall act as a special prosecuting attorney in any criminal action that may be brought before the municipal courts of Porto Rico by the Commissioner, by the district agents, or by any other official of the Department of Labor, in case of violation of labor-protecting laws, and of all such legislation whose enforcement may have been entrusted to the Department of Labor. The Commissioner of Labor shall assign to this Bureau such personnel as he may deem necessary to render this service." Session Laws, p. 182.

An in the budget for 1931–1932, that is, for the year in which the department was created, the following appropriation was made:

"Wage Protection and Claim Bureau, Salaries: Attorney in charge of the Bureau, $1,800.00." Session Laws, 1931, p. 788.

On June 26, 1931 the defendant Commissioner addressed a letter to the Civil Service Commission, which, in so far as pertinent, states:

"Sir:—In accordance with paragraph 9, Rule III of the Puerto Rican Civil Service Act and Regulations, I have the honor to request authorization to make the following temporary appointments in this department, for a term of 90 days, beginning on the date on which the services begin:

"Attorney Narciso Estrella Frasqueri, as Attorney in charge of the Wage Protection and Claim Bureau, at an annual salary of $1,800.

"  *        *        *        *        *        *        *

"Attorney Estrella Frasqueri reports his academic degrees to be the following: College, LL. B., LL. M., and LL. M. in Diplomacy. He is recommended on the advice of the Attorney General.

"The office of Attorney in charge of this Wage Protection and Claim Bureau, requires now in the new Department of Labor special qualifications precisely because of the nature of the work that is entrusted to him. It is the practice of the department to decide claims, as far as possible, by using persuasive and diplomatic means before taking the same into court; and this candidate, as has been said before has made special studies in diplomacy. He is also an English and Spanish stenographer. He is now practicing his profession of attorney at law and notary public. He worked for the Federal Government at Washington for over six years and he offers as references the War Department in Washington and the Department of Interior at Washington, D. C."

To this letter the President of the Commission, on July 3, 1931, replied, in so far as is pertinent, as follows:

"Sir:—In reply to the request in your letters of June, 26, 1931, and in accordance with Section IX, Rule III of the Civil Service of Puerto Rico, I have the honor to inform you that the following temporary appointments have been authorized for a term not exceeding ninety (90) days:

"Pending the selection of eligibles from lists which should be requested of this office a soon as possible:

"Narciso Estrella Frasqueri, as Attorney in charge of the Wage Protection and Claim Bureau, with an annual salary of $1,800.

"*          *          *          *          *          *          *

"All of the said appointments from July 1, 1931.

"This authorization is granted to facilitate the initiation of the urgent functions of that deparment, it being understood, however, that the temporary appointments to fill the offices of Attorney In Charge of the Wage Protection and Claim Bureau; . . . are authorized with the intention of permitting persons who held offices in the former Department of Agriculture and Labor which were similar as to official duties, although designated differently in the budget of the Department of Labor, as is alleged by said persons, who have appealed to this Commission contending that the offices are identical and that therefore they have the right to continue holding them, to present their arguments before you, and at the same time, to give this Commission the opportunity of knowing the opinion of the Attorney General of Puerto Rico on this matter, which will be submitted to his study."

On June 29, 1931, V. Ramos Rodríguez, Chief of the Division of Property and Accounts, addressed a letter to the petitioner, Géigel Polanco, informing him "that in accordance with a notice received from the Hon. Commissioner of Labor, you will cease in your office in the Labor Division tomorrow, June 30," and the petitioner actually did cease to discharge the duties of his office on June 30, 1931, the other defendant, Narciso Estrella, thenceforth holding it temporarily.

The petitioner Géigel Polanco appeared in the records of the Civil Service Commission as the only person eligible for the office of attorney in the "registry of reinstatements" and the defendant Narciso Estrella appeared in the "regular registry of eligibles," for the office of attorney. In order to clarify these conclusions and to be able to appreciate their proper meaning, from the testimony of Félix R. Hilera, President of the Civil Service Commission, we copy the following:

"Q. How many cards are there in this registry of reinstatements? A. One.—Q. For the office of Attorney in Charge of the Wage Protection and Claim Bureau?—A. The office of attorney is one . . . In the office in itself, qualification as an attorney is sufficient for the holding of offices in general. For example, for any Government office which requires general legal knowledge and adequate instruction in legal knowledge, eligibles having the qualification of attorney may undoubtedly be certified. Therefore we have Attorney Géigel's card of eligibility for reinstatement in a registry under the heading of attorney and we can certify him for any office of this nature in any department of the Government.—Q. How many other cards are there in the registry for reinstatement for the office of attorney?—A. This is the only one in the registry.—Q. Only this one?—A. Yes, sir . . .—Q. At the time the Commissioner of Labor requested authorization from the Civil Service Commission to make the appointment, was or was not Mr. Estrella, that is, the co-defendant in this case, eligible for the office of attorney in charge of claims in the Department of Labor? That is, could he or could he not be appointed to the office to which he was appointed? . . .—A. Mr. Estrella Frasqueri was eligible for the office of attorney and his name appeared in the regular registry of eligibles for offices of attorney.—Q. And being eligible for

the office of attorney and his name appearing in the Civil Service Commission for such purpose, could he be appointed to the office of Attorney in Charge of the Wage Protection and Claim Bureau of the Department of Labor?—A. Mr. Estrella Frasqueri was not in turn to be certified for that office.—Q. My question is not exactly whether he was in turn but whether, being eligible, he could be appointed.— A. One may be eligible and not certifiable to a department for appointment and in the case of Mr. Narciso Estrella, he was eligible but he could not be certified because his turn had not come . . . —Q. In the personal file of Narciso Estrella the letters 'PSE' appear on one of the divisions of the card which the witness has in his hand. Please explain to the Court what that means.—A. On the card, which constitutes the Service Record of Narciso Estrella Frasqueri, in the fifth column entitled 'Examination' the letters 'PSE' mean 'Pending the selection of an eligible'."

At the trial the petitioner testified thus:

"I verbally asked the Commissioner of Labor that I continue in office because I understood that it was the same office; the name of the office had not been changed in the new law; it is identical in functions, in salary, and in category, and I understood that the circumstance of the name of the Department having been changed by the Act of Congress, did not change the office, and in order to remove me from it, it was necessary to bring charges, and as no charges existed against me, I alleged that I had the right to continue holding it, and even if it were considered as a new office, on the ground that the Department of Agriculture and Labor was divided into two departments, the offices are alike in name, category and salary, and supposing that it were considered as a new office, I alleged that I had a preferential right to continue holding it. For these reasons I asked him that I continue to hold the office, or that the new appointment be made in my favor, and he refused."

The petitioner also resorted to the Civil Service Commission, and on October 21, 1931, addressed a letter to the Commissioner of the Department of Labor which reads as follows:

"I have just learned in the Department of Justice that the opinion requested by the Puerto Rican Civil Service Commission in regard to the preferential right which I have always had to hold the office of

Attorney in Charge of the Wage Protection and Claim Bureau of the Department of Labor, has been rendered and is favorable to me.

"Therefore, and since I know that you intend to sail shortly for the United States, I make haste to again demand that I be reinstated in the said office and that the salaries corresponding to the months of July, August, September, and October of the present year, to which I am entitled because of my illegal removal, be paid me."

That letter was answered by the Commissioner as follows:

"In regard to your letter of the 21st of the current month I have the pleasure of informing you that as soon as we have had official information in this Department on the matter to which your letter refers, we will have the pleasure to inform you of the action adopted by this Department."

It seems that the opinion of the Department of Justice was not actually delivered and it was then that the petitioner decided to resort to the courts requesting that his rights be declared and enforced.

The petition covers three prayers, the first two in alternative form, to wit: reinstatement or new appointment, and the last, damages as the consequence of either of the first two.

In our opinion, the first contention of the petitioner is not tenable, upon the facts and the law. It was so decided by the trial court itself, which decided the case in his favor.

The office held by the petitioner ceased to exist together with the law which created it. The Department of Labor came to exist as such by the Act of Congress of February 18, 1931, and was organized to function independently by the Act of the Legislature of April 14, 1931. The Commissioner, as we have seen, was expressly authorized to appoint all of the personnel necessary for the department to function properly. It is true that the work assigned to the department had formerly been done to a great extent by the Department of Agriculture and Labor created by the Organic Act of 1917, and that the office of Attorney in Charge of the Wage Protection and Claim Bureau in the new organization is similar

to that of the old one, but that does not necessarily imply that it is the same office.

Now then, the new department was to function within a pre-existing government of law, and hence subject to such general laws in force as might be applicable to it, one of which was the Civil Service Act of 1907 (Comp. Stat. 1911, sec. 304), section 5 of which act provides that:

"In the event that a position is abolished by legislative action, the employee holding such position at the time of the abolition shall continue as an eligible for similar positions, and shall receive preference in the filling of the next vacancy of similar character."

Complying with this statutory provisions, the Civil Service Commission kept the petitioner, not on the list of eligibles, but on that of reemployments, and as he was the only one there, the defendant Commissioner had the clear duty of appointing him to the newly created similar office in his Department which technically, according to the decisions (22 R.C.L. 437), should have been considered as vacant, with preference over any other person, inasmuch as there was no charge against him and he had successfully performed, in practice, the new duties which the act assigned to the office.

Having decided this point, let us see now whether the defendant Rivera Martínez may, in his capacity as Commissioner of Labor, be ordered to approve and send to the Auditor of Puerto Rico the vouchers covering the salaries which the petitioner has failed to receive, as the judgment appealed from orders him to do.

In our judgment he cannot be ordered to do so. The defendant was not illegally removed from his office. The office ceased to exist. It is true that we have recognized his right to be appointed, but he may draw a salary only after the appointment. Moreover, even though this were not so, and the petitioner's case could be considered equivalent to an illegal removal, we find that another person was appointed to the office and received the salaries, and the weight of authority is inclined, in our judgment, to hold that in such

case the People should not be made to pay the same salary twice. The damages caused should be paid for by the officer who acted illegally or who improperly collected the salary.

Corpus Juris summarizes the applicable cases as follows:

"According to one line of decisions, mandamus will not lie to compel the payment of a salary to a de jure officer who has been prevented from performing the duties of office where payment has already been made to another exercising the functions of the office as a de facto officer, the proper remedy being an action for recovery of damages against the usurper, in which the amount of salary, if not the fixed measure of damages, may, at least, be considered in their assessment. Other decisions hold that, where a de jure officer has been wrongfully deprived of his office, mandamus will lie to compel payment of the salary to him, although the salary had already been paid to a de facto officer who performed the duties of the office; . . ." 38 C. J. 718.

The judgment appealed from should be reversed in so far as it orders the issuance of vouchers for the payment of salaries to the petitioner, and affirmed as to its other provisions.